UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACI JACKSON,

          Plaintiff,

v.

MDOC WOMEN'S HURON VALLEY
CORRECTIONAL FACILITY, et al.,

          Defendants.

                                                  /

Case No. 2:21-cv-11633

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING MOTION TO DISMISS [12]**

Plaintiff Traci Jackson was a prisoner at the Michigan Department of Corrections ("MDOC") Women's Huron Valley Correctional Facility. ECF 1, PgID 3. She sued the MDOC and several high-ranking MDOC employees under 42 U.S.C. § 1983 for violating her rights under the Fourth, Eighth, and Fourteenth Amendments. *Id.* at 3–10. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF 12.[1] For the following reasons, the Court will grant the motion.

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

## BACKGROUND[2]

Plaintiff was a prisoner in MDOC's Women's Huron Valley Facility in September 2012. ECF 1, PgID 4. Defendants were all high-ranking employees within MDOC, and Defendant Warren was the Women's Huron Valley Facility warden. *Id.* at 3–4.

MDOC policy provided that "[a] strip search shall be conducted in a place which prevents the search from being observed by those not assisting in that search, unless an emergency requires that to be conducted immediately and there is no opportunity to move to a sheltered area." *Id.* at 5. On September 6, 2012, Plaintiff alleged Officer Epps violated the policy by strip searching Plaintiff and another prisoner "in the same room and full view of each other." *Id.*

Plaintiff filed a grievance about the strip search.[3] *Id.* The grievance was denied at step III, but, at step II, the grievance review found that the strip search conflicted with MDOC policy. *Id.* at 5–6. Defendant "Warren concluded that there was evidence to support a violation of [MDOC policy], and steps would be taken to make sure it did not occur in the future." *Id.* at 6.

Plaintiff generally alleged that "[other] inappropriate searches occurred before and after this September 6, 2012 search for which Plaintiff filed her grievances." *Id.* But Plaintiff failed to allege any information about the other searches. *See id.*

---

[2] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.
[3] Plaintiff attached a poor-quality copy of her step II grievance appeal response. ECF 16-1, PgID 108. Only half the page is viewable.

## LEGAL STANDARD

Under Rule 12(b)(6), courts will grant a motion to dismiss if a complaint fails to allege enough facts "to raise a right to relief above the speculative level" or to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Courts view complaints in the light most favorable to the nonmoving party, presume the truth of all well-pleaded factual assertions, and draw every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430. But "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" given that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then a court must grant a motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

To start, Plaintiff abandoned her claims against MDOC because the Eleventh Amendment barred them. ECF 16, PgID 99. Plaintiff also abandoned her claims against the individual Defendants in their official capacities for the same reasons. *Id.* The Court will therefore grant the motion to dismiss the MDOC and the official capacity claims against the individual Defendants. The Court will now address the

3

remaining § 1983 claims against the individual Defendants in their individual capacities in turn.

To establish a § 1983 claim, Plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived [her] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citation omitted). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, *with particularity*, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 685 (6th Cir. 2008) (emphasis added and removed) (citation omitted). Beyond that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to plead a claim. *Iqbal*, 556 U.S. at 678.

Defendants moved to dismiss the § 1983 claims based on qualified immunity. ECF 12, PgID 72–81. When a party moves to dismiss a complaint based on qualified immunity, the analysis tracks how a Court would resolve a Rule 12(b)(6) motion to dismiss. *Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021).

"Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). It "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant asserts a qualified immunity defense, "Plaintiff bears the burden of showing that [a] defendant[] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Under qualified immunity, the Court must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

First, the Court must "view[] the facts in the light most favorable to [Plaintiff]" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). For the second prong, "if there is a constitutional violation, the [C]ourt must determine whether that constitutional right was clearly established at the time of the incident." *Id.* (citation omitted).

The Court will first dismiss the Fourth Amendment claims. After, the Court will dismiss the Eighth Amendment claims. Last, the Court will dismiss the Fourteenth Amendment claims.

I.  Fourth Amendment

A search of a prisoner is unreasonable based on a balancing test. First, the Court must "assess the degree to which [the search] invaded the prisoner's right to privacy" by examining "the scope, manner, and location of the search—as well as the justification for initiating it." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013). Second, the Court must "evaluate the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions." *Id.* And

5

third, the Court must "determine whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion." *Id.* (citation omitted).

> For the Fourth Amendment claims, Plaintiff alleged that:
>
> Defendants are individually liable for the unconstitutional conditions at Huron Valley because they and/or their agents (1) participated in creating and carrying out the unconstitutional policies that caused the harm to each [sic] Plaintiff; (2) failed to take necessary steps to ensure the safety and wellbeing of Plaintiff; and (3) implicitly authorized, approved or knowing [sic] acquiesced in the unconstitutional conduct of offending MDOC staff.

ECF 1, PgID 9. The only person who allegedly strip-searched Plaintiff was Officer Epps, and she is not a party in the present case. *Id.* at 5. And Plaintiff never alleged that Officer Epps strip-searched her based on an order from any Defendant. *See id.* at 5.

Because Plaintiff did not allege that Defendants strip-searched her, Defendants have not plausibly violated her Fourth Amendment rights against unlawful search. Instead, Plaintiff's Fourth Amendment claim appears to rely on vicarious liability or liability based on their official capacities. For example, Plaintiff alleged that Defendants failed to institute adequate policies, and failed to supervise or train MDOC staff. *Id.* at 9. These general allegations are claims that can be brought only against an individual in their official capacity. *See Phillips v. Roane Cnty.*, 534 F.3d 531, 533–34 (6th Cir. 2008) ("[G]eneral allegations that [Defendants] were not properly trained are more appropriately submitted as evidence to support a failure-to-train theory against the municipality itself, and not the supervisors in their

6

individual capacities.") (citation omitted). But Plaintiff abandoned the official capacity and MDOC claims. ECF 16, PgID 99.

That said, to hold a supervisor liable in their individual capacity based on failure to train or supervise, Plaintiff "must point to a *specific* action of each individual supervisor to defeat a qualified immunity claim." *Id.* at 534 (emphasis added). And the only specific allegation in the complaint that mentioned a Defendant is against Defendant Warren. ECF 1, PgID 6. But that allegation is not enough to plausibly show a constitutional violation. For one, the allegation explained Defendant Warren's conduct *after* the strip search by Officer Epps—the only strip search alleged with particularity in the complaint. *Id.* at 5–6. For another, the allegation destroys Plaintiff's failure to supervise claim against Defendant Warren because the allegation suggested that he would make sure future inappropriate searches did not occur. *Id.* at 6. Without specific allegations against Defendants, the Court can only evaluate the complaint based on the generalized allegations of wrongdoing or the general allegations about job descriptions.

"[I]t is well-settled that qualified immunity must be assessed in the context of each individual's *specific* conduct." *Stoudemire*, 705 F.3d at 570 (emphasis added) (quotation and citations omitted). And without those specific allegations, the only plausible inference the Court can reach based on the complaint is that Plaintiff wants the Court to find liability based on vicarious liability. But "[i]t is well-settled that 'government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior.'" *Peatross v. City of Memphis*,

7

818 F.3d 233, 241 (6th Cir. 2016) (alteration omitted) (quoting *Iqbal*, 556 U.S. at 676). In all, the Fourth Amendment claims contained nothing but generalized allegations that failed to show how each Defendant violated her Fourth Amendment rights. It follows that Plaintiff cannot meet her burden of showing that each individual Defendant has no right to qualified immunity. The Court will thus grant qualified immunity to Defendants on the Fourth Amendment claims because Plaintiff has not plausibly alleged that any Defendant violated her Fourth Amendment rights.

II. <u>Eighth Amendment</u>

An Eighth Amendment violation arising from conditions of confinement requires Plaintiff to show that "the failure to protect from [the] risk of harm [was] objectively sufficiently serious," and that "the official acted with deliberate indifference to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (internal quotation marks and quotations omitted). Deliberate indifference requires a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). And the Eighth Amendment does not "allow liability to be imposed on [Defendants] solely because of the presence of objectively inhumane prison conditions." *Id.* at 838 (citation omitted). Instead, *each* Defendant must have "been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also have drawn that inference." *Stoudemire*, 705 F.3d at 570 (cleaned up). And Plaintiff must allege the "requisite knowledge and culpable mental state . . . for *each* [Defendant] individually." *Id.* (emphasis added) (quotation omitted).

8

The Eighth Amendment claims fail because Plaintiff has not alleged whether each Defendant knew about the alleged illegal strip searches or somehow failed to properly train or supervise officers who conducted the strip searches. *See* ECF 1, PgID 7–8. Again, the only illegal strip search particularly alleged in the complaint was the search by Officer Epps. *Id.* at 5. And the complaint alleged that Defendant Warren knew about the search *after* it occurred and that he would act to prevent it from happening again. *Id.* at 6. Plaintiff failed to allege that there were other strip searches that Defendant Warren knew about and to which he turned a blind eye. *See id.* Thus, without more, Defendant Warren could not have "been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed." *Stoudemire*, 705 F.3d at 570 (cleaned up).

As for the other Defendants, there are no allegations in the complaint apart from their job descriptions and the vague allegations aimed at all Defendants' conduct. *See generally* ECF 1. With no facts supporting whether each Defendant knew about the illegal searches, the complaint fails to show that each Defendant had the requisite mindset for an Eighth Amendment violation. Indeed, Plaintiff did not differentiate the conduct of each Defendant at all. *See generally id.* As a result, the Court must grant qualified immunity for the Eighth Amendment claims because Plaintiff failed to plausibly plead a constitutional violation.[4]

---

[4] The Court's analysis about failure to train or supervise and vicarious liability for the Fourth Amendment claim applies with equal force to Plaintiff's Eighth Amendment claims. The Court will, in the interest of judicial economy, avoid the duplicative analysis for why Plaintiff cannot hold Defendants liable in their individual capacities based on those theories.

III.    Fourteenth Amendment

Plaintiff's Fourteenth Amendment claims are no different from the Fourth Amendment claims that the Court has dismissed. The Fourteenth Amendment claims relied on violations to Plaintiff's privacy rights. ECF 1, PgID 9 ("Defendants, by their unconstitutional polices, have violated Plaintiff's rights under the 4th and 14th Amendments by forcing female prisoners to submit to strip searches in the presence of unnecessary third parties in the manner previously described."). But the Sixth Circuit has confirmed that these kinds of claims properly arise under the Fourth Amendment—not the Fourteenth Amendment. *See Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 757 n.26 (6th Cir. 2004) ("This court has found the 'privacy' right against the forced exposure of one's body to strangers of the opposite sex to be located in the Fourth Amendment.") (citations omitted). The Court will therefore dismiss the Fourteenth Amendment claims for the same reasons as the Fourth Amendment claims. In sum, the Court will grant the motion to dismiss.

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [12] is **GRANTED**.

**SO ORDERED.**

                                                s/ Stephen J. Murphy, III
                                              STEPHEN J. MURPHY, III
                                              United States District Judge

Dated: March 30, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2022, by electronic and/or ordinary mail.

                                                s/ David P. Parker
                                              Case Manager